UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHAMPAGNE D. MOORE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF THE ARMY, <br> Defendant. | Civil Action No. 25-3376 (RBW) |

**MOTION TO DISMISS AND**
**<u>MEMORANDUM IN SUPPORT THEREOF</u>**

**TABLE OF CONTENTS**

Table of Contents.................................................................................................................. 1

Table of Authorities ............................................................................................................. 2

Introduction.......................................................................................................................... 6

Background ........................................................................................................................... 7

Legal Standards.................................................................................................................. 10

    I.       Rule 12(b)(1).................................................................................................. 10

    II.     Rule 12(b)(6).................................................................................................. 11

Argument ........................................................................................................................... 13

    I.       Plaintiffs Seek Impermissible Equitable Relief, Non-Pecuniary Damages, and Inapplicable Fee Requests...................................................................... 13

    II.     Plaintiffs Do Not Plausibly Allege "Intentional or Willful" Agency Conduct..... 14

          A.    "Intentional or Willful" Is a Term of Art Focused on Agency Noncompliance, Not Strict Liability for Any Employee Wrongdoing..... 14

          B.    Plaintiffs Plead No Facts Showing Agency Notice, Authorization, Policy, or Ratification Sufficient to Convert an Unauthorized Deviation into "Agency" Willfulness. ................................................................................. 15

          C.    The "Egregiousness" Plaintiffs Claim Targets the Alleged Bad Act, Not the Required Agency Culpability............................................................. 17

    III.   Plaintiffs Do Not Plausibly Allege Any Pecuniary Loss Proximately Caused by the Alleged Disclosure. .................................................................................. 18

          A.    The Challenged Record is About Truss, Not Moore or Her Children ...... 19

          B.    Moore Cannot Recover Derivatively for Truss's Dispute or for Nonparty Minors' Alleged Injuries................................................................................21

          C.    Custody-Case Legal Fees Are Not Plausibly Pleaded as Proximately Caused by the Alleged Disclosure. ............................................................ 21

          D.    Therapy Expenses Do Not Plead Recoverable "Actual Damages," and the Complaint Does Not Plausibly Allege Proximate Cause........................... 22

- 2 -

E.     Even Assuming Plaintiffs Incurred Therapy Expenses "As a Result of" the Police Report, the Complaint Pleads an Independent, Substantive Disclosure of the Same Incident Information Through Live Testimony.. 23

Conclusion ....................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Aguirre v. SEC*,
671 F. Supp. 2d 113 (D.D.C. 2009) .................................................................................. 22

*Albright v. United States*,
732 F.2d 181 (D.C. Cir. 1984) ......................................................... 15, 16, 17, 20, 21, 25, 26

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ......................................................................................................... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 13, 21, 24

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) ....................................................................................... 14

*Bartel v. FAA*,
725 F.2d 1403 (D.C. Cir. 1984) ....................................................................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................... 13, 21

*Chichakli v. Tillerson*,
882 F.3d 229 (D.C. Cir. 2018) .................................................................................... 14, 20

*Doe v. Stephens*,
851 F.2d 1457 (D.C. Cir. 1988) ....................................................................................... 15

*F.A.A. v. Cooper*,
566 U.S. 284 (2012) ....................................................................... 13, 14, 15, 16, 21, 24, 25

*Farah v. Esquire Mag.*,
736 F.3d 528 (D.C. Cir. 2013) ......................................................................................... 14

*FDIC v. Meyer*,
510 U.S. 471 (1994) ......................................................................................................... 12

*Fitzpatrick v. IRS*,
665 F.2d 327 (11th Cir. 1982) ......................................................................................... 17

*Glass v. U.S. Dep't of Just.*,
279 F. Supp. 3d 279 (D.D.C. 2017) ................................................................................. 24

*Haase v. Sessions*,
835 F.2d 902 (D.C. Cir. 1987) ......................................................................................... 13

*Haase v. Sessions*,
893 F.2d 370 (D.C. Cir. 1990) .................................................................................... 15, 16

*Henke v. U.S. Dep't of Com.*,
  83 F.3d 1453 (D.C. Cir. 1996) ....................................................................... 23

*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) ....................................................................... 13

*Hettinga v. United States*,
  677 F.3d 471 (D.C. Cir. 2012) ....................................................................... 13

*Hill v. Air Force*,
  795 F.2d 1067 (D.C. Cir. 1986) (per curiam) ................................................... 14, 17

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42 *(*D.C. Cir. 2019*)*
  ............................................................................................................... 19, 21, 24, 25

*Kaempe v. Myers*,
  367 F.3d 958 (D.C. Cir. 2004) ....................................................................... 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ..................................................................................... 12

*Lane v. Peña*,
  518 U.S. 187 (1996) ..................................................................................... 12, 15

*Lorenzo v. United States*,
  719 F. Supp. 2d 1208 (S.D. Cal. 2010) ............................................................ 23

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................... 12

*Molerio v. FBI*,
  749 F.2d 815 (D.C. Cir. 1984) ....................................................................... 15, 21, 25, 26

*Randall v. NASA*,
  14 F.3d 1143 (6th Cir. 1994) ......................................................................... 17-18

*St. Francis Xavier Parochial Sch.*,
  117 F.3d ................................................................................................... 14

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ....................................................................................... 12

*Stewart v. Kendall*,
  578 F. Supp. 3d 18 (D.D.C. 2022) .................................................................. 13

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ..................................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..................................................................................... 14

*Tijerina v. Walters*,
821 F.2d 789 (D.C. Cir. 1987) ...................................................................................... 17, 20

*Tobey v. NLRB*,
40 F.3d 469 (D.C. Cir. 1994) ............................................................................................ 22

*United States v. Mitchell*,
445 U.S. 535 (1980) ........................................................................................................ 12

*Whitaker v. CIA*,
31 F. Supp. 3d 23 (D.D.C. 2014) .................................................................................... 23

*White v. Off. of Pers. Mgmt.*,
840 F.2d 85 (D.C. Cir. 1988) ................................................................ 14, 16, 17, 19, 20

*Wilborn v. Dep't of Health & Hum. Servs.*,
49 F.3d 597 (9th Cir. 1995) ............................................................................................ 17

**Statutes**

5 U.S.C. § 552a ............................................ 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26

Defendant Department of the Army, by and through the undersigned counsel, hereby moves to dismiss Plaintiffs' Complaint for lack of subject-matter jurisdiction and for failure to state a claim. Accordingly, the Department respectfully requests that the Court dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).

## INTRODUCTION

This case is about a private family dispute that reached across the country and, through one employee's off-script email, dragged a military police report into the churn of custody litigation. Plaintiffs describe a law-enforcement report generated after Fort Shafter police responded to a 911 call at their home—one that contained sensitive personal identifiers for both spouses and their minor children and carried prominent handling restrictions on its face. The narrative then leaves any recognizable "Army release" process behind. A warrant officer who shares a child with Plaintiff Truss sought "documentation" for use in Colorado custody proceedings; when the Army's investigative office had nothing to provide, she was directed to administrative points of contact. Plaintiffs allege an administrative employee then, without authorization, emailed the warrant officer an unredacted copy of the report, placing it directly into the hands of private litigants and lawyers for use in a running domestic dispute.

Even on Plaintiffs' own telling, this was not a breakdown of an institutional disclosure regime; it was a one-off deviation that occurred in spite of preexisting safeguards designed to prevent exactly this sort of event. The report itself was labeled to restrict dissemination and warn against further distribution. The Army's official channels also signaled restraint rather than release—telling the requester there was nothing to share and steering her toward appropriate points of contact without authorizing disclosure. And the transmission occurred in the shadow of automated controls meant to catch protected personal information before it leaves the system.

Those are the marks of an organization attempting to prevent improper disclosure, not an agency deciding to make one.

After the disclosure came to light, the Army characterized it as what it was—an unauthorized, mistaken transmission—and documented institutional follow-through: an internal inquiry, administrative action, and a review and strengthening of procedures to reduce the risk of recurrence. Plaintiffs nevertheless attempt to reframe this isolated mistake as an Army-level event with sweeping consequences. They ask the Court to treat the Government as now effectively owning the legal and psychological toll of what was already contentious family-law litigation—stress, anxiety, even costs of custody proceedings. But their narrative never lands on what matters in a damages case: a concrete, non-speculative out-of-pocket loss plausibly caused by the alleged disclosure itself, as opposed to the preexisting and self-propelling dynamics of private domestic litigation.

## BACKGROUND

Plaintiffs Champagne D. Moore and Eric A. Truss allege they are a married couple residing in Honolulu, Hawaii. Compl. (ECF No. 2) ¶ 3. Plaintiffs' narrative begins with a military police response to their home at Fort Shafter in Hawaii on September 2, 2024, following a dispatch by Military 911, and the generation of a "Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7." Compl. (ECF No. 2) ¶ 16. Plaintiffs allege that the report identified Truss as the "subject" of the investigation and identified Moore and Plaintiffs' minor children as "victims." Compl. (ECF No. 2) ¶ 16. Plaintiffs further allege the report included personal identifiers for Plaintiffs and their minor children. Compl. (ECF No. 2) ¶ 16. Plaintiffs allege that the report also contained an admonishment that it was "Law Enforcement Sensitive" controlled unclassified information, that dissemination was restricted to "authorized holders," and that it could not be further distributed. Compl. (ECF No. 2) ¶ 17.

- 7 -

Plaintiffs allege that, before the September 2024 incident, Truss and Warrant Officer 1 Lacie M. Reyes were involved in an El Paso County, Colorado proceeding concerning a parenting plan for a child they share. Compl. (ECF No. 2) ¶ 18. Plaintiffs allege Reyes was seeking "evidence" or documentation regarding the incident for use in that custody dispute. Compl. (ECF No. 2) ¶ 20. Plaintiffs allege that on September 24, 2024, Reyes emailed Captain Zoe E. Hall, identified as an officer in the U.S. Army Criminal Investigation Division, requesting documentation "in detail" and explaining that she did not have the details of what transpired because she "wasn't there." Compl. (ECF No. 2) ¶ 20; Email Traffic (ECF No. 1-2) at 5. Plaintiffs allege Captain Hall responded that she did not have documentation to share and provided points of contact for the Provost Marshal Office administrative section and military police numbers, while also noting that because the investigation was ongoing the military police contacts "may not be able to give [Reyes] much." Compl. (ECF No. 2) ¶ 21; Email Traffic (ECF No. 1-2) at 5.

Plaintiffs allege that, later that same day and again in December 2024, Reyes contacted Manolo B. Espiritu in his capacity in the Fort Shafter Provost Marshal Office administrative section and requested the initial police report for use in the custody dispute. Compl. (ECF No. 2) ¶ 22; Email Traffic (ECF No. 1-2) at 3–4. Plaintiffs allege that, in these communications, Reyes provided Truss's Social Security number to the Provost Marshal Office. Compl. (ECF No. 2) ¶ 22; Email Traffic (ECF No. 1-2) at 2. Plaintiffs' attached email traffic reflects Reyes emphasizing that she wanted documentation to present "for our custody case" and that the matter was "very important." Email Traffic (ECF No. 1-2) at 2.

Plaintiffs allege that on or about December 10, 2024, Espiritu—identified as a civilian employee serving as "PMO - Admin Section/Police Admin"—sent Reyes an unredacted copy of the initial police report for her use in the custody dispute. Compl. (ECF No. 2) ¶ 23. Plaintiffs

allege that Espiritu transmitted the report twice and wrote that he was "Resending" it and had received a "[personal protected information] warning." Compl. (ECF No. 2) ¶ 23; Email Traffic (ECF No. 1-2) at 2. The same email string reflects Espiritu describing the case as still open, stating it was with investigators awaiting a legal opinion from a judge advocate, and stating he could not provide other paperwork at that time. Email Traffic (ECF No. 1-2) at 2. That email string also reflects Espiritu providing information for the U.S. Army Crime Records Center and referencing the possibility of making a Freedom of Information Act request there. Email Traffic (ECF No. 1-2) at 2. Plaintiffs allege that on or about December 11, 2024, counsel for Reyes in the custody proceeding emailed the initial police report to Truss's counsel and to a mediator in the custody matter, and that this was the first time Plaintiffs learned of the alleged Privacy Act violation. Compl. (ECF No. 2) ¶ 26.

Plaintiffs further allege that, at a custody hearing on April 30, 2025, a state-court judge in El Paso County took extensive testimony from a military police investigator regarding the September 2024 incident. Compl. (ECF No. 2) ¶ 27; Tr. (ECF No. 1-3) at 3–18. The transcript reflects testimony identifying Truss as the "subject" of the investigation and describing the witness's role as a military police investigator responding to and documenting the incident. Tr. (ECF No. 1-3) at 8–9, 12–13.

Plaintiffs allege they contacted Representative Ed Case regarding the release of the police report. Compl. (ECF No. 2) ¶ 28. Plaintiffs attach a June 12, 2025 letter from the U.S. Army Installation Management Command responding to Representative Case that characterizes the disclosure as an "unauthorized release" in which a Department of Emergency Services employee "mistakenly sent the initial unredacted police report" to Reyes. Letter from U.S. Army Garrison Hawaii to Rep. Case (ECF No. 1-4) at 1. That letter also states the Provost Marshal conducted an

inquiry, took "appropriate administrative action," and reviewed administrative procedures to strengthen records-privacy practices and prevent future unintentional releases. Letter from U.S. Army Garrison Hawaii to Rep. Case (ECF No. 1-4) at 1. The letter describes the report as detailing a "domestic violence and child neglect incident alleged to have been committed by SFC Truss." Letter from U.S. Army Garrison Hawaii to Rep. Case (ECF No. 1-4) at 1.

## LEGAL STANDARDS

### I.       Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) tests the Court's subject-matter jurisdiction and, therefore, the Court's power to hear the case. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and possess only the authority conferred by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court must assure itself of subject-matter jurisdiction before reaching the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). The plaintiff bears the burden to establish jurisdiction, and the Court has an independent obligation to satisfy itself of jurisdiction at every stage. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Where, as in Privacy Act litigation, the defendant is the United States or a federal agency, the jurisdictional inquiry typically begins with sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity bars suit unless Congress has unequivocally waived immunity by statute, and any waiver must be strictly construed in the Government's favor. *Lane v. Peña*, 518 U.S. 187, 192 (1996); *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The terms of the waiver define the Court's jurisdiction, such that if the complaint does not plausibly bring the case within the waiver's scope, the Court must dismiss for lack of subject-matter jurisdiction. *Lane*, 518 U.S. at 192; *Meyer*, 510 U.S. at 475. In the Privacy Act context, Congress consented to suit only as authorized by 5 U.S.C. § 552a(g), and the Act's damages remedy is further limited by §

552a(g)(4)'s prerequisites. 5 U.S.C. § 552a(g); 5 U.S.C. § 552a(g)(4). The Supreme Court has emphasized that § 552a(g)(4) is a narrow waiver of sovereign immunity. *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012). Consistent with that narrow waiver, courts in this District treat the statutory prerequisites for monetary relief—including the requirement of "actual damages" and the "intentional or willful" standard—as part of the waiver analysis and dismiss under Rule 12(b)(1) where the pleaded claim does not fall within the waiver's terms. *Stewart v. Kendall*, 578 F. Supp. 3d 18, 23 (D.D.C. 2022); 5 U.S.C. § 552a(g)(4).

A Rule 12(b)(1) motion may be "facial" or "factual," and the Court is not confined to the four corners of the complaint when evaluating a jurisdictional challenge. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). In resolving Rule 12(b)(1), the Court may consider materials outside the pleadings and may weigh evidence to determine whether jurisdiction exists. *Haase v. Sessions*, 835 F.2d 902, 905–08 (D.C. Cir. 1987).

## II.    <u>Rule 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint under Rule 8(a)(2). Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8(a)(2). A complaint must contain a short and plain statement showing entitlement to relief and may not rest on labels, conclusions, or a formulaic recitation of elements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). To survive dismissal, the pleaded facts must state a claim that is plausible on its face and allow the Court to draw a reasonable inference of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Plausibility is context-specific and requires more than allegations merely consistent with liability. *Id.* at 678; *Twombly*, 550 U.S. at 557. In applying Rule 12(b)(6), the Court accepts well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor, but it does not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–79; *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).

On a Rule 12(b)(6) motion, the Court's review is generally limited to the complaint and materials properly considered at the pleading stage. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). The Court may consider exhibits attached to the complaint because an exhibit to a pleading is part of the pleading for all purposes. Fed. R. Civ. P. 10(c). The Court may also consider documents incorporated by reference or integral to the complaint, as well as matters subject to judicial notice, without converting the motion to summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624–25. Where a document properly considered at this stage conflicts with a conclusory allegation, the document controls over the allegation. *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004); *Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013).

In a Privacy Act disclosure case, Rule 12(b)(6) requires the complaint to plausibly plead the elements that Congress made prerequisites to relief. 5 U.S.C. § 552a(g)(1)(D); 5 U.S.C. § 552a(g)(4). A plaintiff seeking damages under § 552a(g)(1)(D) must plausibly allege a violation of the Act that was "intentional or willful" and that caused an "adverse effect" in the form of "actual damages." 5 U.S.C. § 552a(g)(1)(D); 5 U.S.C. § 552a(g)(4); *Chichakli v. Tillerson*, 882 F.3d 229, 233 (D.C. Cir. 2018). The "intentional or willful" requirement is a term of art requiring more than negligence and demanding conduct "somewhat greater than gross negligence," focused on culpable agency noncompliance. *White v. Off. of Pers. Mgmt.*, 840 F.2d 85, 87–88 (D.C. Cir. 1988); *Hill v. Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986) (per curiam). The "actual damages" requirement is limited to proven pecuniary loss, not emotional distress or generalized privacy harms. *Cooper*, 566 U.S. at 298–303; 5 U.S.C. § 552a(g)(4)(A). The Act's causation language ("as a result of") requires plausible allegations of proximate causation linking the statutory violation to

- 12 -

the claimed pecuniary loss. 5 U.S.C. § 552a(g)(4)(A); *Albright v. United States*, 732 F.2d 181, 184–89 (D.C. Cir. 1984); *Molerio v. FBI*, 749 F.2d 815, 825–26 (D.C. Cir. 1984).

## ARGUMENT

### I.    Plaintiffs Seek Impermissible Equitable Relief, Non-Pecuniary Damages, and Inapplicable Fee Requests

Plaintiffs plead a single Privacy Act disclosure claim for monetary relief under 5 U.S.C. § 552a(g)(1)(D). Compl. (ECF No. 2) at 7–8. That "catch-all" cause of action authorizes only monetary damages, not injunctive, declaratory, or other equitable relief. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007); *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988); 5 U.S.C. § 552a(g)(1)(D). The Privacy Act's equitable remedies are expressly limited to amendment and access suits under § 552a(g)(1)(A)–(B), implemented through § 552a(g)(2)(A) and (g)(3)(A). *Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990). Because Privacy Act remedies rest on a narrow waiver of sovereign immunity, Plaintiffs cannot expand the available relief through a general request for "other and further relief." Compl. (ECF No. 2) at 8; *Lane v. Peña*, 518 U.S. 187, 192 (1996).

The same remedial limits apply to damages: § 552a(g)(4) permits recovery only for "actual damages sustained" (plus a statutory minimum where applicable), together with costs and reasonable attorney's fees as part of a damages judgment. 5 U.S.C. § 552a(g)(4)(A)–(B). "Actual damages" in § 552a(g)(4)(A) means proven pecuniary loss, not emotional distress, reputational harm, or a generalized "invasion of privacy." *Cooper*, 566 U.S. at 299–304. Plaintiffs expressly seek "non-economic" harms tied to stress and "invasion of privacy," alongside their claimed expenditures. Compl. (ECF No. 2) at 7–8.

Finally, Plaintiffs' request for attorney's fees "including but not limited to" § 552a(g)(2)(B) and § 552a(g)(3)(B) invokes fee provisions tethered to the Act's amendment and access causes of

- 13 -

action, not a disclosure-damages claim. Compl. (ECF No. 2) at 8; 5 U.S.C. § 552a(g)(2)(B), (g)(3)(B); *Haase*, 893 F.2d at 373. A § 552a(g)(1)(D) disclosure case instead proceeds under § 552a(g)(4), which authorizes any fees and costs only as part of a damages recovery under that subsection. 5 U.S.C. § 552a(g)(4)(A)–(B).

## II.    Plaintiffs Do Not Plausibly Allege "Intentional or Willful" Agency Conduct.

The Privacy Act's damages remedy is a limited waiver of sovereign immunity that runs against the agency, and it is available only where a plaintiff pleads (and ultimately proves) that the agency acted in an "intentional or willful" manner and that the violation caused "actual damages." 5 U.S.C. § 552a(g)(1)(D); 5 U.S.C. § 552a(g)(4); *Cooper*, 566 U.S. at 290–91. The Supreme Court has repeatedly emphasized that waivers of sovereign immunity must be strictly construed and that courts may not "enlarge[]" a damages remedy beyond the terms Congress enacted. *Cooper*, 566 U.S. at 290–91. Plaintiffs' Complaint, however, effectively treats the Department of the Army as strictly liable whenever an employee misuses access to information, untethered to well-pleaded facts showing the Army's own culpable, agency-level noncompliance with § 552a(g)(4)'s demanding standard. *Albright*, 732 F.2d at 189. Indeed, the pleading's exhibits simply allege at most a single, unauthorized disclosure by a line employee in the administrative chain, followed by internal corrective action—not agency-level, reckless noncompliance with the Privacy Act's disclosure regime. Compl. (ECF No. 2) ¶¶ 22–23, 29; Letter from U.S. Army Garrison Hawaii to Rep. Case (ECF No. 1-4) at 1.

### A.    "Intentional or Willful" Is a Term of Art Focused on Agency Noncompliance, Not Strict Liability for Any Employee Wrongdoing

"Intentional or willful" in § 552a(g)(4) is a term of art that demands more than proof that an act by some government employee was voluntary rather than inadvertent. *White*, 840 F.2d at 87–88. The D.C. Circuit frames the inquiry as whether "the agency" acted "without grounds for

believing [its conduct] lawful" or in "flagrant[] disregard[]" of Privacy Act rights. *White*, 840 F.2d at 87–88. The Circuit has likewise emphasized that not every "affirmative or negligent action" that contravenes the Act supports damages liability, because the statute targets an "intentional or willful failure of the agency to abide by the Act[.]" *Albright*, 732 F.2d at 189. In this Circuit, the willfulness requirement is "somewhat greater than gross negligence," not ordinary carelessness, mistake, or poor judgment. *White*, 840 F.2d at 87; *Hill*, 795 F.2d at 1070.

That agency-centered mens rea is fatal to Plaintiffs' theory as pleaded because their factual narrative depicts a single, off-channel dissemination for private custody litigation that was contrary to the record's handling restrictions, not an Army policy choice or systemic practice that plausibly suggests reckless agency noncompliance. Compl. (ECF No. 2) ¶¶ 16–17, 22–25. Plaintiffs' exhibits reinforce that the challenged transmission was unauthorized and treated internally as mistaken, which is the opposite of plausibly alleging "flagrant disregard" by the agency itself. *See* Letter from U.S. Army Garrison Hawaii to Rep. Case (ECF No. 1-4) at 1.

> **B.    Plaintiffs Plead No Facts Showing Agency Notice, Authorization, Policy, or Ratification Sufficient to Convert an Unauthorized Deviation into "Agency" Willfulness.**

Because § 552a(g)(4) turns on agency-level culpability, Privacy Act decisions implicitly recognize that willfulness findings tend to involve disclosures by senior officials, supervisors, or otherwise official channels, or facts plausibly suggesting the agency adopted, directed, or knowingly acquiesced in the disclosure. *See, e.g.,* T*ijerina v. Walters,* 821 F.2d 789, 792 (D.C. Cir. 1987) (disclosure through official VA channels via the Deputy Inspector General); *Bartel v. FAA*, 725 F.2d 1403, 1405 (D.C. Cir. 1984) (disclosure through FAA division chief, after consulting counsel); *Wilborn v. Dep't of Health & Hum. Servs.*, 49 F.3d 597, 602 (9th Cir. 1995) (disclosure by the ALJ-supervisor who referenced it in an official decision); *Fitzpatrick v. IRS*, 665 F.2d 327, 328–29 (11th Cir. 1982) (disclosure through plaintiff's IRS supervisor); *Randall v.*

*NASA*, 14 F.3d 1143, 1145–46, 1149 (6th Cir. 1994) (division chief convened staff meeting and had Occupational Medicine chief attend to discuss employee's medical condition using information from agency workers' compensation file). Plaintiffs plead none of that here.

Plaintiffs allege that the "Law Enforcement Report—Initial" included sensitive personal identifying information. Compl. (ECF No. 2) ¶ 16. The complaint alleges no supervisory directive to transmit the report, and Plaintiffs' exhibits instead show a Criminal Investigation Division officer disclaiming that she had documentation to share and warning that the investigation was ongoing. Email Traffic (ECF No. 1-2) at 5. Those pleaded restrictions are the opposite of an allegation that the Army maintained a permissive policy or practice of emailing unredacted law-enforcement reports to private litigants for use in domestic litigation.

Plaintiffs' "[personal protected information] warning" allegation does not plausibly bridge that gap from negligence to willfulness. The Complaint alleges that Mr. Espiritu emailed the unredacted report, then sent it again, writing: "Resending this incase (sic) you weren't able to open it. I received a PPI [personal protected information] warning." Compl. (ECF No. 2) ¶ 23. But the pleading does not allege that the employee read the warning, understood that it flagged an impermissible disclosure to a private litigant, and then consciously chose to proceed in spite of that understanding. Nor does the Complaint allege what, specifically, triggered the automated warning or that the warning was keyed to the presence of unredacted third-party identifiers as opposed to other "personal protected information" appearing in the email exchange. Compl. (ECF No. 2) ¶¶ 22–23. The plausible inference from a resend "in case you weren't able to open it" is a clumsy attempt to resolve a delivery/attachment issue, not a deliberate decision to violate a known legal prohibition.

Finally, Plaintiffs' exhibits affirmatively plead institutional response rather than institutional disregard. Letter from U.S. Army Garrison Hawaii to Rep. Case (ECF No. 1-4) at 1. Plaintiffs attach a letter stating the Provost Marshal "conducted a thorough inquiry" into the release, "took appropriate administrative action," and conducted a "comprehensive review" to strengthen procedures "to prevent future unintentional releases." Letter from U.S. Army Garrison Hawaii to Rep. Case (ECF No. 1-4) at 1. Whatever Plaintiffs may argue about the seriousness of the alleged disclosure's consequences, the statutory question under § 552a(g)(4) is whether the Army's conduct plausibly reflects "flagrant disregard" for Privacy Act rights, and Plaintiffs' own exhibits, even construing all inferences in their favor, demonstrate the opposite. *White*, 840 F.2d at 87–88. This case is worlds apart from situations where plaintiffs plead willfulness through allegations of sustained, institutional indifference—such as years of ignored, specific warnings about systemic deficiencies—sufficient to support an inference of "willful[] indifferen[ce]." *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 63–64 (D.C. Cir. 2019).

### C.      The "Egregiousness" Plaintiffs Claim Targets the Alleged Bad Act, Not the Required Agency Culpability.

Plaintiffs attempt to satisfy § 552a(g)(4) by asserting that the Provost Marshal Office administrative employee's release was "willful and intentional" because he resent the report after receiving an automated "personal protected information" warning. Compl. (ECF No. 2) at 7. This addresses (at most) the alleged wrongfulness of a single employee's act; it does not plead facts making it plausible that the Army—as an agency—acted "without grounds for believing" its conduct lawful or in "flagrant disregard" of Privacy Act rights. *White*, 840 F.2d at 87–88. Indeed, it was the Army that automated the email warning system to attempt to prevent the employee from sending "personal protected information." Moreover, Plaintiffs' own framing—that a commanding officer later characterized the disclosure as "unlawful"—undercuts any attempt to

repackage the claim as an authorized, official Army disclosure carried out through lawful channels. Compl. (ECF No. 2) ¶ 29.

As noted above, this Circuit has repeatedly held that "intentional or willful" in § 552a(g)(4) sets a high bar—"somewhat greater than gross negligence"—rather than ordinary carelessness, mistake, or poor judgment. *White*, 840 F.2d at 87; *Tijerina*, 821 F.2d at 799. And because § 552a(g)(4) targets an "intentional or willful failure of the agency to abide by the Act," a plaintiff must plead facts permitting a plausible inference of reckless agency noncompliance, not merely that an employee's act was voluntary and wrongful. *Albright*, 732 F.2d at 189.

The Complaint's own factual allegations do not plausibly clear that "somewhat greater than gross negligence" threshold. Compl. (ECF No. 2) ¶¶ 16–25. Plaintiffs allege the police report contained sensitive personal identifying information and was repeatedly marked "Law Enforcement Sensitive" controlled unclassified information with an admonishment restricting dissemination to "authorized holders" and prohibiting further distribution. Compl. (ECF No. 2) ¶ 17. Plaintiffs further allege that when the private litigant requested "evidence" for a custody dispute, the Criminal Investigation Division officer responded that she did not have documentation to share and referenced the ongoing nature of the investigation. Compl. (ECF No. 2) ¶ 21. Plaintiffs then allege a Provost Marshal Office administrative employee later emailed the unredacted report to that private litigant for use in her custody dispute and wrote that he was "resending" it because he received a "PPI warning." Compl. (ECF No. 2) ¶ 23.

### III.    Plaintiffs Do Not Plausibly Allege Any Pecuniary Loss Proximately Caused by the Alleged Disclosure.

A plaintiff seeking money damages under the Privacy Act must plausibly allege (1) a violation of the Act, (2) that was "intentional or willful," and (3) that caused an "adverse effect" in the form of "actual damages." 5 U.S.C. § 552a(g)(1)(D), (g)(4); *Chichakli*, 882 F.3d at 233.

Congress's waiver of sovereign immunity for damages in subsection (g)(4) is strictly limited to "actual damages," which the Supreme Court has construed to mean "special damages for proven pecuniary loss," not embarrassment, mental anguish, or other emotional distress. 5 U.S.C. § 552a(g)(4)(A); *Cooper*, 566 U.S. at 298–303. The statute separately requires that "actual damages" be sustained "as a result of" the violation, which this Circuit treats as a proximate-causation requirement rather than an invitation to plead downstream interpersonal fallout or litigation spillovers untethered to the challenged disclosure. 5 U.S.C. § 552a(g)(4)(A); *Albright*, 732 F.2d at 186–89; *Molerio*, 749 F.2d at 825–26; *Data Sec. Breach Litig.*, 928 F.3d at 67.

Plaintiffs instead plead therapy expenses and a lump sum of custody-case fees that, on the Complaint's own telling, arise from the ordinary costs and emotional reverberations of preexisting family-court litigation and generalized anxiety about personal information exposure. Compl. (ECF No. 2) ¶ 18; Compl. (ECF No. 2) at 7–8. This does not plausibly plead recoverable "actual damages" proximately caused by the alleged disclosure. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Accordingly, suit should be dismissed under Rule 12(b)(6). 5 U.S.C. § 552a(g)(1)(D), (g)(4).

### A.    The Challenged Record is About Truss, Not Moore or Her Children

First, it is worth underscoring what the Complaint itself identifies as the operative "record": an "Initial" Army Law Enforcement Report generated after Fort Shafter police responded to a 911 call and opened an investigation listing Truss as the "subject." Compl. (ECF No. 2) ¶ 16. As pleaded, the report is structured around that law-enforcement event—who was investigated, what responding officers did, and the incident narrative recorded for investigative and administrative purposes—so the document's center of gravity is the Army's documentation of alleged conduct by (and investigative attention toward) Truss, not a personnel file compiled to describe Moore or the minor children as such. Compl. (ECF No. 2) ¶ 16–17.

Plaintiffs allege Moore and the minor children are referenced as victims in the narrative fields and that the report includes their personal identifiers. Compl. (ECF No. 2) ¶ 16. But a Privacy Act disclosure-damages claim turns on disclosure of a "record" that is "about" the plaintiff—i.e., information that actually describes the individual—rather than information that merely applies to, is associated with, or incidentally references someone while the agency is documenting business "about" somebody else. 5 U.S.C. § 552a(a)(4). The D.C. Circuit's decision in *Tobey v. NLRB* draws that distinction sharply by explaining that a data field linked to an employee (there, initials) did not make the case-tracking entry "about" the employee where the entry described the underlying case activity, and the employee-identifying information functioned only as an administrative reference point. *Tobey v. NLRB*, 40 F.3d 469, 471–72 (D.C. Cir. 1994). District courts applying *Tobey* likewise treat incidental inclusion of identifiers or narrative mentions as insufficient where the record's content and purpose remain directed at agency action about another person or another event. *Aguirre v. SEC*, 671 F. Supp. 2d 113, 121–22 (D.D.C. 2009).

Relatedly, Plaintiffs do not plead the mechanics that would connect any alleged disclosure "about" Moore or the children to a system-of-records retrieval keyed to their identities, as opposed to Truss's. Compl. (ECF No. 2) ¶¶ 16, 22. A "system of records" is a group of records from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifier assigned to the individual. 5 U.S.C. § 552a(a)(5). And a disclosure claim under the Privacy Act is framed around disclosure of a record "contained in a system of records," which in turn makes the pleaded retrieval-by-identifier pathway a core part of plausibly alleging that the disclosed material is the plaintiff's "record" within the meaning of the statute. 5 U.S.C. § 552a(b); 5 U.S.C. § 552a(g)(1)(D). The Complaint's pleaded retrieval "key" runs the other direction: it alleges that WO1 Reyes provided Truss's Social Security number to the Provost Marshal Office

when seeking the report. Compl. (ECF No. 2) ¶ 22. It does not allege that the administrator searched for, retrieved, or disclosed the report using Moore's name, Moore's Department of Defense identification number, or any identifier assigned to the minor children. Compl. (ECF No. 2) ¶¶ 16, 22–23. That omission matters because, under controlling D.C. Circuit law, the defining feature of a system of records is actual retrieval by personal identifier, not merely the presence of identifying information somewhere within a document or the theoretical ability to locate a document by searching. 5 U.S.C. § 552a(a)(5). *Henke v. U.S. Dep't of Com.*, 83 F.3d 1453, 1459–60 (D.C. Cir. 1996).

### B.    Moore Cannot Recover Derivatively for Truss's Dispute or for Nonparty Minors' Alleged Injuries

The Privacy Act does not recognize spousal or derivative recovery, and each "individual" must plead and prove their own cognizable, proximately caused, pecuniary loss. *Whitaker v. CIA*, 31 F. Supp. 3d 23, 48 (D.D.C. 2014) (Privacy Act does not confer rights on relatives to exercise access/amendment rights for another person); *Lorenzo v. United States*, 719 F. Supp. 2d 1208, 1215–16 (S.D. Cal. 2010) (plaintiff lacked standing to sue for adverse effects she suffered from disclosure of her husband's record; Privacy Act claim belongs to the "individual" identified in the record). To the extent Ms. Moore's claimed costs are in substance the financial consequences of Truss's custody litigation with Reyes, that is not a Privacy Act damages theory Moore can press as her own claim. 5 U.S.C. § 552a(g)(1)(D), (g)(4). Relatedly, the Complaint's reliance on alleged exposure of the minor children's identifiers cannot sustain damages or relief in this action because the children are not parties. Compl. (ECF No. 2) at 1.

### C.    Custody-Case Legal Fees Are Not Plausibly Pleaded as Proximately Caused by the Alleged Disclosure.

Plaintiffs allege "legal fees of over $20,000 in the custody case." Compl. (ECF No. 2) at 7–8. But the Complaint also pleads that "prior to this incident," SFC Truss and WO1 Reyes "were

involved in a civil case" to establish a parenting plan, meaning the custody case preexisted the alleged disclosure and would have generated fees regardless. Compl. (ECF No. 2) ¶ 18. Plaintiffs allege that WO1 Reyes sought the report "to use the evidence in a custody dispute," that her attorney transmitted it to Truss's attorney and a mediator, and that a state judge later heard testimony from the responding officer. Compl. (ECF No. 2) ¶¶ 20, 26–27. The Complaint pleads no distinct motion practice, hearings, discovery, or other billable work that was uniquely necessitated by the report itself rather than by intervening litigation choices and state-court dynamics that break the causal chain. *In re U.S. Off. of Pers. Mgmt.*, 928 F.3d at 67; *Iqbal*, 556 U.S. at 678.

> **D.      Therapy Expenses Do Not Plead Recoverable "Actual Damages," and the Complaint Does Not Plausibly Allege Proximate Cause.**

The Complaint alleges that Moore "has had to undergo therapy" and that Plaintiffs "have spent thousands on therapy due to the stress involved in the custody dispute," while also alleging "extreme emotional distress and anxiety," including stress from knowing the children's identifiers were exposed. Compl. (ECF No. 2) at 7–8. That narrative frames therapy as a response to emotional distress and family-court stressors—precisely the sort of non-pecuniary harm Congress did not authorize in the Privacy Act's narrow damages waiver. *Cooper*, 566 U.S. at 298–303; 5 U.S.C. § 552a(g)(4)(A). Re-labeling emotional distress as "therapy bills" does not transform nonrecoverable harm into recoverable "actual damages" within the meaning of subsection (g)(4). *Cooper*, 566 U.S. at 298–303; *Glass v. U.S. Dep't of Just.*, 279 F. Supp. 3d 279, 283 (D.D.C. 2017). Courts in this District dismiss damages claims where plaintiffs identify only vague, stress-linked expenses without pleading concrete, non-speculative pecuniary loss sustained as a result of the alleged violation. *Glass*, 279 F. Supp. 3d at 283.

Independently, the "as a result of" element requires plausible allegations that the alleged disclosure was a substantial factor producing the claimed out-of-pocket costs and that such costs were foreseeable and proximately caused by the violation. 5 U.S.C. § 552a(g)(4)(A); *Albright*, 732 F.2d at 186–89; *In re U.S. Off. of Pers. Mgmt.*, 928 F.3d at 67. Plaintiffs plead no facts tethering any decision to seek treatment—or any incremental treatment costs—to the disclosure itself, as opposed to preexisting family conflict, the custody litigation's ordinary pressures, independent stressors, or the emotional reverberations of interpersonal disputes.

**E.** **Even Assuming Plaintiffs Incurred Therapy Expenses "As a Result of" the Police Report, the Complaint Pleads an Independent, Substantive Disclosure of the Same Incident Information Through Live Testimony.**

The proximate-cause requirement likewise forecloses damages theories that depend on intervening litigation dynamics or independent third-party actions rather than the challenged disclosure itself. *Molerio v. FBI*, 749 F.2d 815, 825–26 (D.C. Cir. 1984). And because Congress's waiver of sovereign immunity is narrow, "actual damages" are limited to proven pecuniary loss rather than generalized distress, even when distress is reframed as a consequence of private turmoil. *F.A.A. v. Cooper*, 566 U.S. 284, 298–303 (2012); 5 U.S.C. § 552a(g)(4)(A).

Even if the Court assumes arguendo that Plaintiffs' alleged therapy expenditures could qualify as pecuniary loss, the Complaint and its exhibits plead an intervening, substantive disclosure of the same incident information through live testimony by a military police investigator in the custody proceeding. Compl. (ECF No. 2) ¶ 27. Plaintiffs allege that, on April 30, 2025, a Colorado state-court judge took "extensive testimony" from a military police investigator about the September 2024 911 response and investigation at Plaintiffs' home. Compl. (ECF No. 2) ¶ 27. The transcript reflects testimony describing the witness's role as the military police investigator, identifying Truss as the "subject" of the investigation, and recounting the substance of the response and documentation of the incident. Tr. (ECF No. 1-3) at 8–9, 12–13. Plaintiffs therefore plead that

the core factual narrative they attribute to the December 2024 email transmission was later developed in open court through sworn testimony. Compl. (ECF No. 2) ¶ 27; Tr. (ECF No. 1-3) at 3–18.

That independent evidentiary development matters because Plaintiffs' therapy allegations are framed as a reaction to the stress and anxiety associated with the custody dispute and the spillover consequences of the incident being litigated, not as a concrete, itemized, incremental expense tied specifically to the unredacted email as opposed to the custody court's receipt of the same underlying facts through testimony. Compl. (ECF No. 2) at 7–8. The Complaint does not plead facts allowing the Court to plausibly infer that the December 2024 email transmission— rather than the custody litigation itself, including live testimony about the incident—was a substantial factor proximately causing any distinct therapy expense. 5 U.S.C. § 552a(g)(4)(A); *Albright*, 732 F.2d at 186–89. Nor does the Complaint plausibly allege that any claimed therapy costs reflect an incremental pecuniary loss attributable to the email transmission over and above the consequences of the same incident information being aired and contested through sworn testimony in the custody proceeding. *Molerio*, 749 F.2d at 825–26.

Accordingly, even accepting Plaintiffs' premise that they incurred therapy expenses after learning that the incident information was in play in the custody dispute, the pleaded custody-hearing testimony supplies an independent source of the same substantive information that defeats any plausible theory that the challenged email transmission proximately caused those costs.

## CONCLUSION

For the foregoing reasons, the Court should grant the Department's motion, dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).

Dated: February 3, 2026                          Respectfully submitted,

                                                 JEANINE FERRIS PIRRO
                                                 United States Attorney

                                        By:          */s/ Brian C. Tracy*
                                                 Brian C. Tracy
                                                 Special Assistant United States Attorney
                                                 601 D Street, NW
                                                 Washington, DC 20530
                                                 (202) 252-7113
                                                 brian.tracy@usdoj.gov

                                                 *Attorneys for the United States of America*

- 25 -