**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CHAMPAGNE D. MOORE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF THE ARMY, <br><br> Defendant. | Civil Action 1:25-cv-3376 (RBW) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
<u>AND MEMORANDUM IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 3

BACKGROUND .............................................................................................................. 5

STATEMENT OF THE LAW .......................................................................................... 7

    I.      Motions under Federal Rule of Civil Procedure Rule 12(b)(1) and 12(b)(6). . 7

    II.     Privacy Act Claims Generally................................................................................ 9

ARGUMENT...................................................................................................................... 9

    I.      The Complaint Establishes a Willful and Intentional Disclosure. ................... 9

    II.     The Complaint Establishes Actual Damages..................................................... 16

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**

*Aguirre v. SEC*, 671 F. Supp. 2d 113 (D.D.C. 2009) ................................................................. 20

*Albright v. United States*, 732 F.2d 181 (D.C. Cir. 1984) ............................................... 11, 13, 15

*Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011) ...................................................... 9, 21

*Ashbourne v. Hansberry*, No. 12-CV-1153, 2015 WL 11303198 (D.D.C. Nov. 24, 2015), *aff'd*,
    703 F. App'x 3 (D.C. Cir. 2017) ......................................................................................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 9, 10

*Auld v. United States*, No. CV 22-3129, 2023 WL 6141666 (D.D.C. Sep. 20, 2023).................... 9

*Bartel v. FAA*, 725 F.2d 1403 (D.C. Cir. 1984) ............................................................................. 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 9

*Chambers v. U.S. Dep't of Interior,* 568 F.3d 998 (D.C. Cir. 2009) ............................................ 10

*Cloonan v. Holder*, 768 F. Supp. 2d 154 (D.D.C. 2011) .............................................................. 20

*Doe v. Chao*, 540 U.S. 614 (2004) ............................................................................................... 17

*Doe v. U.S. Department of Justice*, 660 F. Supp. 2d 31 (D.D.C. 2009) ................................. 10, 17

*Doe v. U.S. Dept. of Labor*, 451 F.Supp.2d 156 (D.D.C. 2006) ............................................. 11, 13

*FAA v. Cooper,* 566 U.S. 284 (2012) .............................................................................. 17, 18, 19

*Feldman v. CIA*, 797 F. Supp. 2d 29 (D.D.C. 2011) ................................................................ 15, 20

*Fitzpatrick v. IRS*, 665 F.2d 327 (11th Cir. 1982) ....................................................................... 16

*Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997) ......................................................................... 13

*Glass v. U.S. Dep't of Just.*, 279 F. Supp. 3d 279 (D.D.C. 2017) ................................................ 19

*Hill v. Air Force,* 795 F.2d 1067 (D.C. Cir. 1986) ....................................................................... 16

*In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42 (D.C.
    Cir. 2019) ..................................................................................................................... 18, 19

*Laningham v. Navy*, 813 F.2d 1236 (D.C. Cir. 1987) .............................................................. 14, 17

*Lombrano v. Department of the Air Force,* 2022 WL 392308 (D.D.C. February 9, 2022).... 15, 17

*Maydak v. United States*, 630 F.3d 166 (D.C. Cir. 2011) ...................................................... 11, 12, 13

*Molerio v. FBI*, 749 F.2d 815 (D.C. Cir. 1984) ............................................................................. 18

*Mulhern v. Gates*, 525 F.Supp.2d 174 (D.D.C.2007) .................................................................. 17

*Paige v. Drug Enf't Admin.*, 665 F.3d 1355 (D.C. Cir. 2012) ...................................................... 10

*Randall v. NASA,* 14 F.3d 1143 (6th Cir. 1994) .......................................................................... 16

*Roberts v. Harvey*, 441 F.Supp.2d 111 (D.D.C. 2006) .................................................. 13

*Tijerina v. Walters,* 821 F.2d 789 (D.C. Cir. 1987)...................................................... 16

*Tobey v. NLRB*, 40 F.3d 469 (D.C. Cir. 1994)............................................................. 20

*Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006) .......................................................... 9

*White v. Office of Pers. Mgmt.*, 840 F.2d 85 (D.C. Cir. 1988) ................................ 11, 16

*Wilborn v. Dep't of Health & Hum. Servs.*, 49 F.3d 597 (9th Cir. 1995).................... 16

*Winters v. Department of the Army*, 1:25-cv-01314-LLA, ECF No. 11 at 17............... 14

*Wright v. Foreign Serv. Griev. Bd.*, 503 F. Supp. 2d 163 (D.D.C. 2007)..................... 9

## STATUTES

5 U.S.C. § 552a .................................................................................................. 13, 16, 17

5 U.S.C. § 552a(a)(5)........................................................................................... 20

5 U.S.C. § 552a(b) ............................................................................................. 10

5 U.S.C. § 552a(g)(1)(D) ..................................................................................... 17

5 U.S.C. § 552a(g)(4)........................................................................................... 10

5 U.S.C. § 552a(g)(4)(A)–(B).............................................................................. 10

## RULES

Fed. R. Civ. Pro. 12(b)(1) ................................................................................... 8, 9

Fed. R. Civ. Pro. 12(b)(6) ................................................................................... 8, 9

## BACKGROUND

Plaintiffs, Champagne D. Moore and Eric A. Truss, are a married couple who currently reside in Honolulu, Hawaii. *See* ECF No. 2 ("Compl.") at ¶ 3. On September 2, 2024, military police at Fort Shafter, Hawaii, responded to a Military 911 call at the Moore-Truss home. *See* Compl. at ¶ 16. Following this incident, the military police generated "Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7." *Id.* The document alleged that Plaintiff Truss was the "subject" of an investigation, and that Plaintiff Moore and the Plaintiffs' minor children were "victims." *Id.* Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7 was clearly labelled as "Law Enforcement Sensitive," and restricted release of the document to "authorized holders." Compl. at ¶ 17.  Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7 included Social Security numbers, Department of Defense identification numbers, dates of birth, and other personal identifying information for Plaintiffs and their minor children. Compl. at ¶ 16.

At the time of the September 2, 2024, incident, Plaintiff Truss was involved in a proceeding in El Paso County, Colorado, concerning a parenting plan with Warrant Officer 1 ("WO1") Lacie M. Reyes, with whom Plaintiff Truss had had a previous relationship. Compl. at ¶ 18. Seeking evidence to use in the custody dispute, on September 20, 2024, WO1 Reyes emailed Captain ("CPT") Zoe E. Hall, an officer in the U.S. Army Criminal Investigation Division, requesting documentation "in detail" of the September 2, 2024, incident. Compl. at ¶ 20. CPT Hall responded that she did not have documentation to share and directed WO1 Reyes to the Provost Marshal Office administrative section and military police numbers, also noting that because the investigation was ongoing the military police contacts "may not be able to give [ WO1 Reyes] much." Compl. at ¶ 21; *see also* ECF No. 1-2 ("Exhibit 1") at 5.

That same day, and subsequently on December 9 and December 10, 2024, WO1 Reyes

contacted Manolo B. Espiritu of the Fort Shafter Provost Marshal Office administrative section and requested Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7 for use in the custody dispute. Compl. at ¶ 22; Exhibit 1 at 3-4. In these communications, WO1 Reyes provided Plaintiff Truss' Social Security number to the Provost Marshal Office. Compl. at ¶ 22; Exhibit 1 at 2.WO1 Reyes specifically identified that any documentation of the incident was "very important" for use in her "custody case." Exhibit 1 at 2.

On December 10, 2024, Mr. Espiritu sent WO1 Reyes an unredacted copy of Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7, knowing that WO1 Reyes intended to use it in her custody dispute. Compl. at ¶ 23. The first time Mr. Espiritu attempted to send the report, he received a warning indicating that he was sending personal protected information. After receiving and ignoring this warning, Mr. Espiritu sent the report again. Compl. at ¶ 23; Exhibit 1 at 2. Mr. Espiritu further informed WO1 Reyes that the case was still open and that it was being "transferred to MPI for further investigation. After they start their investigation, I can get you more information." Exhibit 1 at 4.

The next day, December 11, 2024, counsel for WO1 Reyes in the custody dispute with Plaintiff Truss emailed Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7 to counsel for Plaintiff Truss and a mediator in the custody dispute. This was the first occasion on which Plaintiffs learned of the disclosure of Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7 in violation of the Privacy Act. Compl. at ¶ 26.

Following the disclosure of Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7, the El Paso County Court held a hearing in the custody dispute on April 30, 2025. During this hearing, the Court took extensive testimony from a military police investigator who had responded to and documented the incident on September 2, 2024. Compl. at ¶ 27; ECF No. 1-

3 ("Exhibit 2") at 3–18. Plaintiffs have incurred over $20,000.00 in legal fees during the custody dispute with WO1 Reyes. Compl. at page 7. Plaintiff Moore also sought therapy due to the stress involved in the custody dispute, knowing that her children's personal information had been permanently exposed and compromised, and the invasion of privacy caused by the release of a sensitive and private incident without her consent. Compl. at page 8.

Plaintiffs Truss and Moore contacted Representative Ed Case regarding the release of Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7. Compl. at ¶ 28. On June 12, 2025, the U.S. Army Installation Management Command responded to Representative Case, admitting that the disclosure of Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7 was an "unauthorized release" and contending that Mr. Espiritu "mistakenly sent the initial unredacted police report" to WO1 Reyes. ECF No. 1-4 ("Exhibit 3") at 1. The June 12, 2025, letter also stated that the Provost Marshal conducted an inquiry together with "appropriate administrative action," and reviewed administrative procedures in order to prevent future unintentional releases. Exhibit 3 at 1.

Plaintiffs brought suit under the Privacy Act in this Court on September 23, 2025. *See* Compl. On February 3, 2026, Defendant filed its motion to dismiss under Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6). *See* ECF No. 11 ("Def. Mot."). Plaintiffs now come with their opposition to the Defendant's motion.

**STATEMENT OF THE LAW**

I.      **Motions under Federal Rule of Civil Procedure Rule 12(b)(1) and 12(b)(6).**

A plaintiff bears the burden of demonstrating a court's subject-matter jurisdiction over the claims at issue in a motion to dismiss under Fed. R. Civ. Pro. 12(b)(1). And under Fed. R. Civ. Pro. 12(b)(6), the Court will dismiss a complaint if it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

7

662, 678 (2009) (citation omitted).

When a defendant files a motion to dismiss under Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6) simultaneously, the court first examines the Fed. R. Civ. Pro. 12(b)(1) challenge and then assesses the Fed. R. Civ. Pro. 12(b)(6) challenge. *Auld v. United States*, No. CV 22-3129, 2023 WL 6141666, at \*2 (D.D.C. Sep. 20, 2023). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint…will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Griev. Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

A motion made under Fed. R. Civ. Pro. 12(b)(6) tests whether a complaint has successfully "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While detailed factual allegations are not necessary to withstand a Fed. R. Civ. Pro. 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or "a formulaic" recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

When assessing a motion to dismiss under both Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6), however, courts must assume that all well-pleaded factual allegations in the complaint are true and additionally grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Still, a court is not required to accept "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal

citation and quotation marks omitted). Yet a claim is facially plausible when a plaintiff pleads factual content that enables a court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### II.      Privacy Act Claims Generally.

The Privacy Act "prohibits a federal agency from 'disclos[ing] any record which is contained in a system of records by any means of communication to any person.'" *Paige v. Drug Enf't Admin.*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) (alteration in original) (quoting 5 U.S.C. § 552a(b)). Privacy Act claims for monetary damages based on improper disclosure have four elements: 1) the disclosed information is a record contained within a system of records; 2) the agency improperly disclosed the information; 3) the disclosure was willful or intentional; and 4) the disclosure adversely affected the plaintiff. *Doe v. U.S. Department of Justice*, 660 F. Supp. 2d 31, 44–45 (D.D.C. 2009), citing *Chambers v. U.S. Dep't of Interior,* 568 F.3d 998, 1006 (D.C. Cir. 2009).

### ARGUMENT

### I.      The Complaint Establishes a Willful and Intentional Disclosure.[1]

A Privacy Act plaintiff must show that the disclosure of the information by the agency was willful and intentional. 5 U.S.C. § 552a(g)(4). But not "every affirmative or negligent action that

---

[1] In the section of its motion to dismiss labelled "Plaintiffs Seek Impermissible Equitable Relief, Non-Pecuniary Damages, and Inapplicable Fee Requests," Defendant argues that Plaintiffs Moore and Truss seek "injunctive, declaratory, or other equitable relief", *see* Def. Mot. at 14, simply because the Plaintiff's Complaint concludes by asking this Court to "order[] such other and further relief as may, in the circumstances, be just and proper", *see* Compl. at page 8. That final sentence is a mere formality intended to show proper deference to this Court, not a would-be end-around circumventing the strictures of the Privacy Act. In addition, Defendant argues that Plaintiffs seek recovery for non-economic harms. Def. Mot. at 14. As discussed below, this is incorrect – Plaintiffs seek recovery for economic harms only. Compl. at page 8. Defendant is correct, however, that Plaintiff's counsel inadvertently referenced the incorrect provision of the Privacy Act when seeking an award of attorney's fees. Def Mot. at 14, citing 5 U.S.C. § 552a(g)(4)(A)–(B). Plaintiff's counsel regrets the error.

might be said technically to violate the Privacy Act's provisions" leads to agency liability. *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984). And "the words 'intentional' and 'willful'… do not have their vernacular meanings." *White v. Office of Pers. Mgmt.*, 840 F.2d 85, 87 (D.C. Cir. 1988). Rather, to show that a disclosure under the Privacy Act was willful and intentional, a plaintiff must establish at least one of the following:

1) The disclosure was "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful"; or,

2) The disclosure was "somewhat greater" than grossly negligent; or,

3) The disclosure was "committed without grounds for believing" that it was lawful; or,

4) The disclosure was "in flagrant disregard of others' rights under the [Privacy] Act."

*Maydak v. United States*, 630 F.3d 166, 180 (D.C. Cir. 2011); *see also Doe v. U.S. Dept. of Labor*, 451 F.Supp.2d 156, 176 (D.D.C. 2006), citing *Albright,* 732 F.2d at 189.

Defendant argues that, in defiance of the legal standards outlined above, Plaintiffs seek to hold the Defendant "strictly liable whenever an employee misuses access to information" and that "a single, unauthorized disclosure by a line employee in the administrative chain, followed by internal corrective action" cannot be grounds for agency liability under the Privacy Act. Def. Mot. at 15. But Defendant misstates both Plaintiffs' claims and the law.

Plaintiffs do not argue for a theory of strict agency liability clearly foreclosed by the Privacy Act's text and relevant case law. Instead, Plaintiffs argue that this Circuit's binding holdings mean what they say: when an agency employee acts in a manner "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful," or makes a

10

disclosure under circumstances "somewhat greater" than gross negligence, or commits a disclosure "without grounds for believing" that it was lawful, or makes a disclosure in "flagrant disregard of others' rights" under the Privacy Act, the intentional or willful element of a Privacy Act claim is satisfied. *Maydak*, 630 F.3d at 180.

Here, Plaintiffs have shown intentional or willful conduct by Mr. Espiritu. Mr. Espiritu sent an unredacted copy of Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7 – a document labelled as "Law Enforcement Sensitive" and restricted for release to "authorized holders" only – to WO1 Reyes, knowing that she intended to use it in her custody dispute. Compl. at ¶¶ 17, 23. The first time Mr. Espiritu attempted to send the report, he received a warning indicating that he was sending personal protected information. Mr. Espiritu did not heed this warning – instead,  he sent the report again. Compl. at ¶ 23; Exhibit 1 at 2. (Mr. Espiritu's persistence in this regard thoroughly debunks the U.S. Army Installation Management Command's self-serving assertion that Mr. Espiritu had "mistakenly sent the initial unredacted police report" to WO1 Reyes. Exhibit 3 at 1.) [2] And Mr. Espiritu offered to send WO1 Reyes even more information to which she had no legal right, informing her that the case was still open and had been "transferred to MPI for further investigation. After they start their investigation, I can get you more information." Exhibit 1 at 4. For all these reasons, Mr. Espiritu's conduct is certainly intentional or willful within the meaning of the Privacy Act, as clarified by this Circuit's holdings.

---

[2] The Defendant also bizarrely argues that Plaintiffs do not allege that Mr. Espiritu "read the warning, understood that it flagged an impermissible disclosure to a private litigant, and then consciously chose to proceed in spite of that understanding." Def. Mot. at 17. In reality, that is precisely what the Complaint alleges. *See* Compl. at ¶¶ 17, 23; Exhibit 1 at 2. The Defendant is correct that the Complaint did not "allege what, specifically, triggered the automated warning," Def. Mot. at 17, but the Plaintiffs did not need to, as the presence of the warning was enough to put Mr. Espiritu on notice that his conduct was illegal. The Defendant's attempt to portray Mr. Espiritu's persistence exclusively as a "clumsy attempt to resolve a delivery/attachment issue, not a deliberate decision to violate a known legal prohibition" is therefore meritless – Mr. Espiritu knew or should have known he was acting illegally. Def. Mot. at 17; *See Maydak*, 630 F.3d at 180.

*See Maydak*, 630 F.3d at 180.

Faced with damning facts which clearly satisfy the statutory requirements, the Defendant tries to move the goalposts, arguing that agencies cannot be held liable under the Privacy Act for the unlawful disclosures by their employees. Def. Mot. at 15. Try as it might, though, the Defendant offers no legal authority which supports this misreading of the Privacy Act.

As an initial matter, the text of the Privacy Act itself provides no support for the Defendant's point of view. The statute does not state that agencies may only be held liable if their employees disclose records as a matter of agency policy, rather than through their own improper actions. *See generally* 5 U.S.C. § 552a. Such a reading of the statute would make a mockery of this Circuit's carefully reasoned case law in this area, which as described above has required the agency employee making the disclosure to have exhibited behavior which is "patently egregious and unlawful…somewhat greater" than gross negligence, "without grounds for believing" that it was lawful,  or in "flagrant disregard of others' rights" under the Privacy Act. *Maydak*, 630 F.3d at 180; *see also Doe v. U.S. Dept. of Labor*, 451 F.Supp.2d at 176, citing *Albright,* 732 F.2d at 189. This type of rogue action maps far more neatly onto the actions of agency employees rather than agencies writ large. Agencies, after all, are presumed to comply with the law. *See, e.g., Roberts v. Harvey*, 441 F.Supp.2d 111, 118 (D.D.C. 2006), *citing Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (discussing the presumption of regularity in government affairs).

Moreover, the Defendant's reading of the statute – for which the Defendant, again, does not even attempt to provide any textual support, *see generally* Def. Mot. – would create extremely perverse incentives for agencies. An agency could unlawfully disclose a citizen's records all it wants, causing the citizen enormous damage in their personal and professional life, and as long as the agency can identify one single high-level official willing to tut-tut and give the disclosing

employee the gentlest possible slap on the wrist, recovery for that citizen under the Privacy Act would be barred, at least according to the Defendant. *See generally* Def. Mot., *especially* at 15. That is plainly not the intent of the Privacy Act.

Two cases in this Circuit, decided roughly four decades apart, serve as useful examples to demonstrate that the focus is on the conduct of individual employees, not agencies writ large, when assessing the intentional and willful element of a Privacy Act claim. In *Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987), an attorney for the United States Navy, which had disclosed the plaintiff's documents, submitted a declaration indicating that he believed such disclosure to be lawful. The *Laningham* Court counted this declaration as a point in the Navy's favor when determining that the disclosure had not been willful and intentional within the meaning of the Privacy Act. *See Laningham,* 813 F.2d at 1239, 1243-1244. The attorney's declaration was only one factor in the *Laningham* Court's analysis – and it was probably not even a particularly important factor. But it nonetheless illustrates that when assessing willful and intentional conduct within the meaning of the Privacy Act, courts in this Circuit do indeed consider and weigh the motivations of individuals who are acting on behalf of government agencies when analyzing the willful and intentional requirement.[3]

---

[3] The Defendant has argued in other filings before this Court that *Laningham* "specifically invokes the language of scope of employment in noting that the Department of Justice attorney…as its counsel for the Navy in this case—"makes the Navy liable for the acts of its agents" under "respondeat superior" principles." *See Winters v. Department of the Army*, 1:25-cv-01314-LLA, ECF No. 11 at 17, quoting *Laningham,* 813 F.2d at 1241, n. 5. The Defendant is selectively quoting *Laningham* – the *Laningham* Court was responding to a specific, and meritless, argument made by the plaintiff-appellant that the actions of the Department of Justice attorney who was representing the Navy could not be imputed to the Navy. 813 F.2d at 1241, n. 5. This finding by the *Laningham* Court has no relevance regarding whether agencies can be held liable for the unlawful actions of their employees under the Privacy Act. If anything, the *Laningham* Court's willingness to impute the intentions of an attorney employed by one agency to a completely separate agency undercuts, rather than supports, the Defendant's claim that intentions and actions of individual agency employees do not matter when assessing intentional and willful conduct under the Privacy Act.

In *Lombrano v. Defendant of the Air Force,* 2022 WL 392308 (D.D.C. February 9, 2022), this Court also reviewed the actions of an individual, not an agency, when determining that the plaintiff had plausibly alleged willful and intentional conduct sufficient to survive a motion to dismiss. That case involved the disclosure of the plaintiff's medical information by a treating physician. *Lombrano,* 2022 WL 392308 at *1. Fatally for the Defendant's argument, this Court looked to the actions of the disclosing "person" to determine whether the "agency" had acted "willfully and intentionally." *Lombrano,* 2022 WL 392308 at *3, favorably citing *Feldman v. CIA*, 797 F. Supp. 2d 29 (D.D.C. 2011).[4]

The Defendant cites a few cases to support his counterview that agencies cannot be held liable for the actions of their employees under the Privacy Act. Def. Mot. at 15-19. But none of these cases hold, or even remotely suggest, that a plaintiff may only recover under the Privacy Act if the plaintiff demonstrates agency-wide acquiescence to a disclosure. In *Albright,* cited by the Defendant at Def. Mot. 15, 16, 19, the Court merely observed that "the 'intentional or willful' action requirement" of the Privacy Act references "only to the intentional or willful failure of the agency to abide by the Act, and not to all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures." 732 F.2d at 189. The Court said nothing at all about the Defendant's distinction between an agency and its employees, a distinction which, if carried to its logical conclusion, would create an exception swallowing the rule of the Privacy Act whole. *White,*

---

[4] The Defendant has argued in other filings before this Court that "the disclosure in *Lombrano* was pleaded official release of medical information from a treating physician (and Colonel) to the plaintiff's employer", *see Winters v. Department of the Army*, 1:25-cv-01314-LLA, ECF No. 11 at 17. This is true but misleading, and it erodes, rather than bolsters, the Defendant's argument. While the defendant in *Lombrano* argued that the disclosure was permitted under two of the Privacy Act's "routine use" exceptions – a claim which the Defendant does not make here – this Court held that neither exception applied. 2022 WL 392308 at *4-*5. And it was the actions of the agency employee under the relevant circumstances which guided this Court's inquiry, not a review of agency policies. *Id.*

840 F.2d at 87, and *Hill v. Air Force,* 795 F.2d 1067, 1070 (D.C. Cir. 1986), both involved discretionary action by agency decision-makers, and in each the respective Court simply stated that standard for "intentional" and "willful" action is somewhat greater than gross negligence. This is a far, far cry from the Defendant's claim that agencies cannot be held liable for unlawful disclosures by their employees, a claim which no language from either *White* or *Hill* supports. Def. Mot. at 15-19; *see generally White,* 840 F.2d at 87; *Hill*, 795 F.2d at 1070.

The Defendant cites many cases which involve high-level agency decision-makers and official agency channels – most of which arise outside this Circuit. Def. Mot. at 16-17, citing *Tijerina v. Walters,* 821 F.2d 789, 792 (D.C. Cir. 1987); *Bartel v. FAA*, 725 F.2d 1403, 1405 (D.C. Cir. 1984); *Wilborn v. Dep't of Health & Hum. Servs.*, 49 F.3d 597, 602 (9th Cir. 1995); *Fitzpatrick v. IRS*, 665 F.2d 327, 328–29 (11th Cir. 1982); *Randall v. NASA,* 14 F.3d 1143, 1145–46, 1149 (6th Cir. 1994). Yet none of these cases can do the work the Defendant needs. None of them state that agencies cannot be held liable for the unlawful actions of their employees under the Privacy Act. How could they, when the Privacy Act itself makes no such claim? *See* 5 U.S.C. § 552a. Problematically for the Defendant, in all of these cases, the Courts considered the conduct of the disclosing employees to determine agency liability. *Tijerina,* 821 F.2d at 792  (disclosure by Deputy Inspector General); *Bartel*, 725 F.2d at 1405 (disclosure by FAA division chief); *Wilborn*, 49 F.3d at 602 (disclosure by ALJ-supervisor); *Fitzpatrick*, 665 F.2d at 328–29 (disclosure by IRS supervisor); *Randall*, 14 F.3d at 1145–46, 1149 (disclosure by division chief and Occupational Medicine chief).

Indeed, the Defendant's observation that "Privacy Act decisions *implicitly* recognize that willfulness findings *tend* to" concern official agency action is a tacit acknowledgement that such a showing is not actually required to show intentional or willful conduct within the meaning of the

Privacy Act. Def. Mot. at 16 (emphasis added). And the Defendant's contention that a Privacy Act claim requires "senior officials, supervisors, or otherwise official channels" or other "facts plausibly suggesting the agency adopted, directed, or knowingly acquiesced in the disclosure" does not reflect any language in the statute itself. Def. Mot. at 16; *see* 5 U.S.C. § 552a.

As *Laningham*, *Lombrano,* and other cases in this Circuit's history demonstrate, when assessing whether an agency has acted willfully or intentionally for the purposes of the Privacy Act, it is the actual behavior of the agency employees at issue – not the actions of the agency as whole, a phrase which the Defendant never bothers to define – that matters. *Laningham,* 813 F.2d at 1239, 1243-1244; *Lombrano,* 2022 WL 392308 at *3. And here, the Plaintiffs have alleged intentional and willful disclosure within the meaning of the Privacy Act. *See, e.g.,* Compl. at ¶¶ 17, 23; Exhibit 1 at 2.

## II.      The Complaint Establishes Actual Damages.

5 U.S.C. § 552a(g)(1)(D) provides a remedy if the agency "fails to comply with any other provision of [the Privacy Act] . . . in such a way as to have an adverse effect on an individual," including by improperly disclosing records in violation of 5 U.S.C. § 552a(b). *See, e.g., Ashbourne v. Hansberry*, No. 12-CV-1153, 2015 WL 11303198, at *9-10 (D.D.C. Nov. 24, 2015), *aff'd*, 703 F. App'x 3 (D.C. Cir. 2017); *Doe v. DOJ*, 660 F. Supp. 2d at 44–45. This requires the plaintiff to show "actual damages" connected to the adverse effect to "qualify" under the Act. *Doe v. Chao*, 540 U.S. 614, 620–27 (2004). A plaintiff must therefore establish not only that he "was adversely affected by the improper disclosure, but also that [he] suffered 'some harm for which damages can reasonably be assessed.'" *Mulhern v. Gates*, 525 F.Supp.2d 174, 181–82 (D.D.C.2007), *quoting Doe v. Chao*, 540 U.S. at 621. *See also FAA v. Cooper,* 566 U.S. 284, 298 (2012) (holding that actual damages in the Privacy Act means "special damages for proven pecuniary loss.")

Here, Plaintiffs have alleged two sources of proven pecuniary loss. *First*, Plaintiffs have

incurred over $20,000.00 in legal fees during the custody dispute with WO1 Reyes. Compl. at page 7. The Defendant argues that Plaintiffs "plead[] no distinct motion practice, hearings, discovery, or other billable work that was uniquely necessitated by the report itself rather than by intervening litigation choices and state-court dynamics that break the causal chain." Def. Mot. at 23. But the disclosure of information by an agency is not required to be the primary or exclusive cause of a plaintiff's adverse impacts; plaintiffs must only show that the agency's "conduct was a *substantial* factor in the sequence of events leading to" the harms they suffered, and that those harms were "reasonably foreseeable or anticipated as a natural consequence" of the agency's conduct. *In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42, 67 (D.C. Cir. 2019) (emphasis added) (internal citations omitted).

Plaintiffs have achieved that standard here. The El Paso County Court held a hearing in the custody dispute on April 30, 2025, following the disclosure of Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7. During this hearing, the Court took extensive testimony from a military police investigator who had responded to and documented the incident on September 2, 2024. Compl. at ¶ 27; Exhibit 2 at 3–18. Defendant's argument that "intervening litigation dynamics or independent third-party actions" caused the hearing is without merit – the facts in the Complaint demonstrate that the hearing took place directly as a result of Defendant's improper disclosure. Compl. at ¶¶ 17, 23; *see* Def. Mot. at 24-25, citing *Molerio v. FBI*, 749 F.2d 815, 825–26 (D.C. Cir. 1984). Plaintiffs have therefore shown that at least some of their legal expenses were caused by the Defendant's improper disclosure. And this is all that is necessary under the Privacy Act. *See In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d at 67; *see also Cooper*, 566 U.S. at 296 (Privacy Act requires only "some pecuniary harm, no matter how slight").

*Second,* Plaintiffs have alleged proven pecuniary loss in the form of therapy expenses incurred by Plaintiff Moore. Compl. at page 8. The Defendant misstates the thrust of Plaintiffs' argument here; while it is certainly true that the custody battle caused its own stress on Plaintiff Moore, *see* Def. Mot. at 23, 24, the Complaint focuses too on her knowledge that her "children's personal information has been permanently exposed and compromised, and the invasion of privacy caused by the release of a sensitive and private incident without her consent." Compl. at page 8. Unlike the plaintiff in *Glass v. U.S. Dep't of Just.*, 279 F. Supp. 3d 279, 283 (D.D.C. 2017), who could only rely on a vague incantation of "missed medical appointments & financial opportunities, because she was spending so much time, and money, trying to contact or follow up with ... Defendant," Plaintiff Moore has here alleged specific medical treatment which arose in part because of the Defendant's disclosure. Compl. at page 8. Here again, Plaintiffs have passed the Privacy Act's low bar for showing pecuniary harm. *See In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d at 67; *see also Cooper*, 566 U.S. at 296.

Defendant's remaining objections to the Plaintiffs' claimed damages are red herrings. Defendant argues that Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7 disclosed was about Plaintiff Truss only, not Plaintiff Moore or the couple's children. Def. Mot. at 20-22. But Plaintiffs alleged no damages on behalf of their children, so it is unclear how the children's status is relevant to any claimed pecuniary loss by Plaintiffs. *See* Compl. at page 8.

Moreover, and contrary to the Defendant, Plaintiff Moore is indeed a subject of Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7 within the meaning of the Privacy Act, because the record is about Plaintiff Moore. Plaintiff Moore is described as a victim in Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7CONCLUSION, which describes a conflict between Plaintiffs Moore and Truss using both their names. Compl. at

¶¶ 16, 17. Contrary to the Defendant, *see* Def. Mot. at 21, the situation here is far from *Tobey v. NLRB*, 40 F.3d 469, 471 (D.C. Cir. 1994), in which a government database concerned the "case name, [] allegations made, [] number of private-sector employees involved and [] date of settlement, hearing, dismissal or closing of the case," not information about the individuals involved specifically. Unlike in *Tobey,* the records involved here "actually describe" Plaintiffs Moore and Truss "in some way." *Id.* at 472. Defendant further invokes *Aguirre v. SEC*, 671 F. Supp. 2d 113, 121 (D.D.C. 2009), *see* Def. Mot. at 21, but that case also required only that "records…contain plaintiff's name and describe plaintiff in some way" (internal citations omitted). Because the record concerns a law enforcement investigation into an event which concerned both Plaintiffs, Plaintiffs Moore and Truss satisfy that requirement. Compl. at ¶¶ 16, 17.

Similarly, Defendant's argument that a record pertaining to Plaintiff Moore was not retrieved is unpersuasive. Def. Mot. at 21-22. The D.C. Circuit has defined two criteria for information to be a "record" within the meaning of the Privacy Act: 1) "the information must be 'about' an individual," and 2) "the information must contain the individual's name or identifying particular." *Tobey,* 40 F.3d at 471; *see also Cloonan v. Holder*, 768 F. Supp. 2d 154, 164 (D.D.C. 2011) (holding that the Privacy Act "covers disclosures of information which was either directly or indirectly retrieved from a system of records"). Plaintiff Moore satisfies both requirements: Law Enforcement Report – Initial – 00448-2024-MPC208-5D1/5C2D/3M7 is "about" Plaintiff Moore, and it contains her "name." *Tobey,* 40 F.3d at 471. True, the Privacy Act requires that the record have been "retrieved by the name of" Plaintiff Moore "or by some identifying number, symbol, or other identifier assigned to" her. 5 U.S.C. § 552a(a)(5). But Plaintiff Moore can "hardly be expected to know the full details behind an improper disclosure prior to discovery, since those details are most likely to be under the control of the defendant." *Feldman*, 797 F. Supp. 2d at 41.

Granting Plaintiff Moore "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co.*, 642 F.3d at 1139, as this Court must at this stage, Plaintiff Moore's claim survives the Defendant's motion to dismiss.

The Defendant also protests that Plaintiff Moore cannot recover derivatively for Plaintiff Truss' injuries. Def. Mot. at 22. While true, this does not negate Plaintiff Truss' ability to recover for the costs he has incurred in the custody dispute, or the costs Plaintiff Moore has incurred in therapy. *See* Compl. at 8.

For all these reasons, Plaintiffs have demonstrated actual damages in their Complaint.

## **CONCLUSION**

For the reasons given above, Defendant's motion to dismiss should be denied. A proposed order is attached.

Dated February 16, 2026.                    Respectfully submitted,

*/s/David P. Sheldon*

David P. Sheldon
DC Bar No. 446039
Law Offices of David P. Sheldon, P.L.L.C.
100 M Street, S.E., Suite 600
Washington, DC  20003
Tel: 202.546.9575
Fax: 202.546.0135

*Attorney for Plaintiff*