UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAMPAGNE D. MOORE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF THE ARMY,<br>Defendant. | Civil Action No. 25-3376 (RBW) |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Table of Contents ........ i

Table of Authorities ........ ii

Argument ........ 1

I. Plaintiffs Still Do Not Plausibly Plead "Intentional or Willful" Agency Conduct. 1

A. Plaintiffs Collapse the "Intentional or Willful" Agency Mens Rea Element Into "Any Action Taken By An Agency Employee" ........ 1

B. Plaintiffs' Authorities Do Not Support a "Rogue Disclosure Equals Willful Agency Noncompliance" Rule ........ 2

C. Plaintiffs' Claimed "Perverse Incentives" Proves that Strict Liability Is Not the Correct Approach ........ 5

II. Plaintiffs Still Do Not Plausibly Plead Recoverable "Actual Damages" Proximately Caused by the Alleged Disclosure ........ 6

A. Moore's "Subject" Theory Misreads *Tobey* and Cannot Cure the Complaint's Failure to Plead Identifier-Based Retrieval of Moore's "Record." ........ 7

B. Plaintiffs Fail to Plausibly Plead That the Alleged Disclosure Was the Proximate Cause of Any Therapy Expenses. ........ 10

Conclusion ........ 12

## TABLE OF AUTHORITIES

**Cases**

*Albright v. United States*,
732 F.2d 181 (D.C. Cir. 1984) .................... 2, 6, 7

*Bartel v. FAA*,
725 F.2d 1403 (D.C. Cir. 1984) .................... 3

*Dickson v. Off. of Pers. Mgmt.*,
828 F.2d 32 (D.C. Cir. 1987) .................... 10

*F.A.A. v. Cooper*,
566 U.S. 284 (2012) .................... 6, 10

*Glass v. U.S. Dep't of Just.*,
279 F. Supp. 3d 279 (D.D.C. 2017) .................... 8-9

*Henke v. U.S. Dep't of Com.*,
83 F.3d 1453 (D.C. Cir. 1996) .................... 7-9, 10

*Hill v. Dep't of the Air Force*,
795 F.2d 1067 (D.C. Cir. 1986) (per curiam) .................... 2, 3

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
928 F.3d 42 (D.C. Cir. 2019) .................... 7, 10

*Lane v. Peña*,
518 U.S. 187 (1996) .................... 1

*Laningham v. U.S. Navy*,
813 F.2d 1236, 1238–39, 1242–44 & n.5 (D.C. Cir. 1987) .................... 4

*Lombrano v. Dep't of the Air Force*,
2022 WL 392308 (D.D.C. Feb. 9, 2022) .................... 4

*Maydak v. United States*,
630 F.3d 166 (D.C. Cir. 2010) .................... 3, 7

*Molerio v. F.B.I.*,
749 F.2d 815 (D.C. Cir. 1984) .................... 6, 7

*Paige v. DEA*,
665 F.3d 1355 (D.C. Cir. 2012) .................... 7

*Tijerina v. Walters*,
821 F.2d 789 (D.C. Cir. 1987) .................... 3

*Tobey v. NLRB*,
40 F.3d 469 (D.C. Cir. 1994) .................... 8, 10

*White v. Off. of Pers. Mgmt.*,
840 F.2d 85 (D.C. Cir. 1988) .......... 2, 5

**Statutes**

5 U.S.C. § 552a .......... 1, 3, 6, 7, 9, 10,

**Other**

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure (4th ed. 2019) .......... 11

## ARGUMENT

### I. <u>Plaintiffs Still Do Not Plausibly Plead "Intentional or Willful" Agency Conduct</u>

#### A. Plaintiffs Collapse the "Intentional or Willful" Agency Mens Rea Element Into "Any Action Taken By An Agency Employee"

Plaintiffs' opposition treats the "intentional or willful" element as satisfied whenever a single employee allegedly acts badly, and it thereby sidesteps the statute's agency-centered mens rea inquiry embedded in a strictly limited waiver of sovereign immunity. Pls.' Opp'n (ECF No. 12) at 10–16. Plaintiffs' theory turns almost entirely on their characterization of Mr. Espiritu's conduct—particularly the alleged "PPI warning" and the alleged resend—rather than on facts plausibly showing culpable agency noncompliance with the Privacy Act's disclosure restrictions. Pls.' Opp'n (ECF No. 12) at 10–12. Plaintiffs expressly reject the very agency-level focus Defendant identified in its motion, insisting that "a plaintiff may [not] only recover under the Privacy Act if the plaintiff demonstrates agency-wide acquiescence," and arguing that "it is the actual behavior of the agency employees at issue—not the actions of the agency as whole . . . that matters." Pls.' Opp'n (ECF No. 12) at 13–16; Def.'s Mot. (ECF No. 11) at 14–19. That reframing is the core defect in Plaintiffs' opposition.

Congress authorized Privacy Act damages only against the "agency," and it conditioned that waiver on proof that "the agency acted in a manner which was intentional or willful," not merely that an employee committed a disclosure plaintiffs later characterize as wrongful. 5 U.S.C. § 552a(g)(1), (g)(4). Because the Privacy Act's civil-remedy provisions operate as a waiver of sovereign immunity, they are construed narrowly, and courts do not expand damages liability beyond the limits Congress specified. *Lane v. Peña*, 518 U.S. 187, 192 (1996). The D.C. Circuit has thus treated the "intentional or willful" requirement as a substantive limitation on the circumstances in which agency damages liability may attach, not as a mechanism for imposing

strict liability whenever any federal employee makes an improper disclosure. *White v. Off. of Pers. Mgmt.*, 840 F.2d 85, 87–88 (D.C. Cir. 1988); *Hill v. Dep't of the Air Force*, 795 F.2d 1067, 1070 (D.C. Cir. 1986). In short, the mens rea element is aimed at culpable agency noncompliance, not automatic respondeat-superior damages for any employee wrongdoing. Def.'s Mot. (ECF No. 11) at 14–19.

As Plaintiffs acknowledge, "intentional or willful" is a term of art that requires more than negligence and reflects a heightened culpability standard tied to agency noncompliance with the Act's requirements. *White*, 840 F.2d at 87–88 In *White*, the court emphasized that "intentional" and "willful" "do not have their vernacular meanings" in this context and instead demand a showing beyond ordinary carelessness or mistake. *Id.* In *Albright*, the Circuit underscored that the requirement "references only to the intentional or willful failure of the agency to abide by the Act," and it expressly does not mean "all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures." *Albright v. United States*, 732 F.2d 181, 189 (D.C. Cir. 1984). Certainly, the standard is "greater than gross negligence." *Hill*, 795 F.2d at 1070. Plaintiffs' approach—treating the element as satisfied by alleged "egregiousness" of an individual employee's act while rejecting any need to plead facts supporting culpable agency noncompliance—collides with these limits. Pls.' Opp'n (ECF No. 12) at 10–16; Def.'s Mot. (ECF No. 11) at 14–19.

**B. Plaintiffs' Authorities Do Not Support a "Rogue Disclosure Equals Willful Agency Noncompliance" Rule**

Plaintiffs rely on *Maydak*, *Laningham*, and *Lombrano* to argue that "the actual behavior of the agency employees at issue" is enough—without more—to plausibly plead the "intentional or willful" element for Privacy Act damages based on a single alleged disclosure. Pls.' Opp'n (ECF No. 12) at 10–16. That framing misapprehends both Defendant's point and this Circuit's

controlling standard. Def.'s Mot. (ECF No. 11) at 15–19. As noted above, Privacy Act authorizes damages only when the agency's failure to comply is "intentional or willful," not when a complaint merely alleges a bad act by a line employee. 5 U.S.C. § 552a(g)(4). And the same agency-centered understanding animates the Circuit's cases assessing Privacy Act disclosures through official channels or with facts plausibly tying the disclosure to supervisory direction, official decisionmaking, or knowing acquiescence. *Hill*, 795 F.2d at 1070; *Tijerina v. Walters*, 821 F.2d 789, 792, 798–99 (D.C. Cir. 1987); *Bartel v. FAA*, 725 F.2d 1403, 1405, 1413–15 (D.C. Cir. 1984).

Nothing in *Maydak* moves Plaintiffs' theory forward; if anything, it underscores the relevance of agency conduct inconsistent with "flagrant disregard." *Maydak v. United States*, 630 F.3d 166, 179–80 (D.C. Cir. 2010). *Maydak* applied the Circuit's willfulness framework to the agency's handling of the challenged record and treated the agency's remedial steps as a pertinent fact bearing on whether the agency intentionally disregarded the Act. *Id.* Here, Plaintiffs' own materials allege and attach facts pointing to institutional repudiation and corrective follow-through—an "unauthorized release" treated as a "mistake," an "internal inquiry," "administrative action," and a "review and strengthening of procedures." Letter from U.S. Army Garrison Hawaii to Rep. Case (ECF No. 1-4) at 1. Those pleaded facts cut against the inference that the Army itself acted with reckless agency noncompliance, even accepting that Plaintiffs allege an individual employee acted improperly. Def.'s Mot. (ECF No. 11) at 15–19.

*Laningham* likewise does not establish that a single alleged rogue disclosure—unmoored from facts showing authorization, adoption, or knowing acquiescence—satisfies § 552a(g)(4) at the pleading stage. Plaintiffs cite *Laningham* for the unremarkable proposition that courts may consider what a government actor believed when evaluating whether a disclosure was "intentional or willful." Pls.' Opp'n (ECF No. 12) at 13–14. That is consistent with Defendant's position, not

contrary to it. Def.'s Mot. (ECF No. 11) at 15–19. In *Laningham*, the D.C. Circuit treated the actions of a Department of Justice attorney—the quintessential "agent"—as attributable to the Navy under respondeat superior principles in the context of an official, litigation-driven disclosure and weighed counsel's stated belief that the disclosure was lawful as a factor bearing on willfulness. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1238–39, 1242–44 & n.5 (D.C. Cir. 1987). *Laningham* therefore illustrates the agency-centered inquiry: whether the agency (acting through agents in an official capacity) proceeded without grounds for believing its conduct lawful or in "flagrant disregard" of the Act. *White*, 840 F.2d at 87–88. It does not hold that damages liability follows whenever a complaint alleges that some employee acted intentionally in a one-off episode divorced from any plausible allegation of agency-level noncompliance.

Plaintiffs' reliance on *Lombrano* fares no better, because neither district-court decision purports to rewrite the D.C. Circuit's mens rea standard or to dispense with the requirement that a plaintiff plead factual content making agency-level culpability plausible. Plaintiffs invoke *Lombrano* to say this Court "reviewed the actions of an individual" and found willfulness plausibly alleged at the motion-to-dismiss stage. Pls.' Opp'n (ECF No. 12) at 14–16. But *Lombrano* involved an alleged disclosure of medical information by a treating physician—an alleged disclosure pleaded as an official release in a workplace context—and the court's plausibility analysis proceeded against that markedly different backdrop. *Lombrano v. Dep't of the Air Force*, 2022 WL 392308, at *1, *3–5 (D.D.C. Feb. 9, 2022).

That is the pleading gap here. Plaintiffs allege an administrative employee forwarded an unredacted law-enforcement report into private custody litigation, including after an automated warning and after removing "markings on the report." Compl. (ECF No. 2) ¶¶ 17, 22–23. They do not plead facts plausibly suggesting that the Army adopted, directed, authorized, or knowingly

acquiesced in that deviation—nor do they plead facts suggesting a systemic disclosure practice through official channels that would support an inference of reckless agency noncompliance rather than an isolated, unauthorized transmission repudiated by institutional follow-up.

### C. Plaintiffs' Claimed "Perverse Incentives" Proves that Strict Liability Is Not the Correct Approach

Plaintiffs argue that, under Defendant's reading of the statute, "[a]n agency could unlawfully disclose a citizen's records all it wants, causing the citizen enormous damage in their personal and professional life, and as long as the agency can identify one single high-level official willing to tut-tut and give the disclosing employee the gentlest possible slap on the wrist, recovery for that citizen under the Privacy Act would be barred[.]" This is not an accurate framing of Defendant's position.

First, this hypothetical is a strawman. Defendant's position is not that an agency can "disclose . . . all it wants" and then immunize itself by having "one single high-level official" issue a nominal reprimand. Pls.' Opp'n (ECF No. 12) at 12. The point is merely that prompt investigation and corrective steps are probative of whether the agency acted with reckless disregard for Privacy Act compliance, but they are not a categorical safe harbor. Def.'s Mot. (ECF No. 11) at 17–18; *White*, 840 F.2d at 87–88

Properly understood, Defendant's position also aligns with a coherent incentive structure that Congress built into § 552a(g)(4): agencies are incentivized to adopt ex ante safeguards (handling restrictions, access controls, training, auditability) and to respond to suspected mishandling with prompt internal remediation, because damages exposure turns on whether the agency's *own* conduct reflects reckless noncompliance rather than a single employee's unauthorized frolic. Def.'s Mot. (ECF No. 11) at 14–16.

By contrast, Plaintiffs' characterization invites the Court to collapse the statute's agency-centered mens rea element into de facto strict liability whenever any employee "unlawfully disclose[s]" information, which would decouple Privacy Act damages from the sovereign-immunity limits Congress actually enacted and would make agency liability turn on any individual's deviation—even when the agency's own systems are designed to prevent that deviation. Def.'s Mot. (ECF No. 11) at 14–16.

## II. Plaintiffs Still Do Not Plausibly Plead Recoverable "Actual Damages" Proximately Caused by the Alleged Disclosure

A plaintiff pursuing a disclosure-based damages claim under 5 U.S.C. § 552a(g)(1)(D) must plausibly allege (and ultimately prove) a statutory violation that produced an "adverse effect," and the only monetary remedy for such a claim is the limited damages judgment authorized by § 552a(g)(4).

First, Congress limited the United States' waiver of sovereign immunity for Privacy Act damages to "actual damages sustained by the individual as a result of" the violation, plus any statutory minimum where applicable. 5 U.S.C. § 552a(g)(4)(A). As Defendant explained, "actual damages" in § 552a(g)(4)(A) means "special damages for proven pecuniary loss," not emotional distress, reputational injury, or a generalized "invasion of privacy." *F.A.A. v. Cooper*, 566 U.S. 284, 298–303 (2012); Def.'s Mot. (ECF No. 11) at 20–21. Second, the statute independently requires that any such pecuniary loss be "sustained … as a result of" the violation, which this Circuit treats as a proximate-causation requirement. 5 U.S.C. § 552a(g)(4)(A); *Albright*, 732 F.2d at 186–89; *Molerio v. F.B.I.*, 749 F.2d 815, 825–26 (D.C. Cir. 1984); Def.'s Mot. (ECF No. 11) at 20–21. In applying that "as a result of" language, the D.C. Circuit analyzes whether the alleged statutory violation was a substantial factor in the chain of events leading to the claimed pecuniary loss and whether the loss was reasonably foreseeable, while excluding damages theories that

depend on intervening events that break the causal chain. *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 67 (D.C. Cir. 2019); *Molerio*, 749 F.2d at 825–26; *Albright*, 732 F.2d at 186–89

### A. Moore's "Subject" Theory Misreads *Tobey* and Cannot Cure the Complaint's Failure to Plead Identifier-Based Retrieval of Moore's "Record."

Plaintiffs argue that Moore is a "subject" of the challenged police report because the narrative identifies her as a "victim" and the report includes her personal identifiers, and they contend that this suffices to treat the report as "about" Moore for Privacy Act purposes. Pls.' Opp'n (ECF No. 12) at 18–19. Plaintiffs further insist that Defendant's reliance on *Tobey* is misplaced because, unlike the case-tracking entry in *Tobey*, the report here "actually describe[s]" Moore and Truss "in some way" by naming them in connection with the incident narrative. Pls.' Opp'n (ECF No. 12) at 18–19.

A plain reading of *Tobey* makes clear that this is not sufficient. The threshold defect is twofold: the "record" Plaintiffs identify is, as pleaded, a law-enforcement report centered on an investigation listing Truss as the "subject," and Plaintiffs plead no facts showing that any "record" about Moore (or the minors) was retrieved from a system of records by Moore's identifiers. Def.'s Mot. (ECF No. 11) at 21–22.

Under the Privacy Act, a disclosure claim targets dissemination of a "record" "contained in a system of records," so the disclosed material must (1) qualify as a "record" "about" the plaintiff and (2) be disclosed from a system in which the information is actually retrieved by a personal identifier. 5 U.S.C. § 552a(a)(4)–(5), (b), (g)(1)(D); *Maydak*, 630 F.3d at 178 (system exists only when material is "both retrievable by personal identifier and actually retrieved by personal identifier") (cleaned up); *Paige v. DEA*, 665 F.3d 1355, 1359 (D.C. Cir. 2012) (same); *Henke v. U.S. Dep't of Com.*, 83 F.3d 1453, 1460–61 (D.C. Cir. 1996) ("retrieval capability is not sufficient

to create a system of records"; the agency must "in practice" retrieve information "by personal identifier"). And the D.C. Circuit in *Tobey* squarely rejects the notion that the mere presence of a name or identifier satisfies the "about" requirement. "[T]he fact that information contains an individual's name does not mean that the information is 'about' the individual," and the Privacy Act reaches information that "actually describes the individual in some way," not just information that happens to include an identifying reference. *Tobey v. NLRB*, 40 F.3d 469, 471–72 (D.C. Cir. 1994). Thus, a document may mention a person—even with identifiers—without becoming a Privacy Act "record" about that person where the document's operative content is about agency business, another person, or an event. *See id.* at 471–72; *see also Henke*, 83 F.3d at 1461 (courts examine "the entirety of the situation, including the agency's function, the purpose for which the information was gathered, and the agency's actual retrieval practice and policies").

Accordingly, Moore's "victim" label and the presence of her identifiers do not, without more, plausibly transform this law-enforcement report into a Privacy Act "record" about Moore for purposes of a disclosure-damages claim. Def.'s Mot. (ECF No. 11) at 21–22. Plaintiffs' own allegations state that the report identifies Truss as the investigation's "subject" and Moore (and the children) as "victims," which at most pleads Moore's inclusion in a narrative documenting an investigative event centered on Truss. Compl. (ECF No. 2) ¶ 16. That is the same basic distinction *Tobey* draws between information "about" the person and information about something else that includes the person as an administrative or narrative reference. 40 F.3d at 471–72. And even aside from the "about" defect, a disclosure claim still requires allegations that the disclosed information was actually retrieved from a qualifying system of records, not merely that such a system may exist in the abstract. *Glass v. U.S. Dep't of Just.*, 279 F. Supp. 3d 279, 280–81 (D.D.C. 2017) ("An actionable claim generally requires that 'a disclosure . . . be the result of someone having actually

retrieved the 'record' from [a] 'system of records.'" (quoting *Armstrong v. Geithner*, 608 F.3d 854, 857 (D.C. Cir. 2010)).

Even if Plaintiffs could recharacterize portions of the narrative as "about" Moore, their theory still fails at the separate—and independently dispositive—"system of records" requirement as pleaded. 5 U.S.C. § 552a(a)(5), (b). A "system of records" exists only where records are, in practice, retrieved "by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual," and D.C. Circuit law requires actual identifier-based retrieval—not merely the presence of identifiers within a document or the theoretical ability to search for them. 5 U.S.C. § 552a(a)(5); *Henke*, 83 F.3d at 1456 n.1. *Henke* thus forecloses Plaintiffs' effort to treat "retrieval" as a pleading formality: the statutory trigger is disclosure of a record "contained in a system of records," and the defining feature of such a system is identifier-based retrieval as a matter of agency practice. *Id.* at 1459–60.

Here, the only pleaded retrieval pathway runs through Truss's identifier, not Moore's. The Complaint alleges that Reyes provided Truss's Social Security number to the Provost Marshal Office when requesting the report. Compl. (ECF No. 2) ¶ 22. And Plaintiffs do not allege that the report was searched for, retrieved, or produced using Moore's name, Moore's identifier, or any identifier assigned to the minor children—an omission that is fatal under *Henke*. Def.'s Mot. (ECF No. 11) at 21–22; Compl. (ECF No. 2) ¶¶ 16, 22–23. Plaintiffs' opposition attempts to wave away this missing element by asserting that Moore cannot be expected to know "the full details" of an improper disclosure pre-discovery. Pls.' Opp'n (ECF No. 12) at 19. But the Privacy Act's waiver of sovereign immunity is conditioned on the statutory elements Congress chose—among them, disclosure of a record from an identifier-retrieved "system of records"—and *Henke* requires at least nonconclusory factual allegations that make identifier-based retrieval by the plaintiff's

identifier plausible. 5 U.S.C. § 552a(a)(5), (b), (g)(1)(D); *Henke*, 83 F.3d at 1459–60; *Tobey*, 40 F.3d at 471–72.

### B. Plaintiffs Fail to Plausibly Plead That the Alleged Disclosure Was the Proximate Cause of Any Therapy Expenses.

Independently, § 552a(g)(4)(A) requires a plaintiff to plead and prove "actual damages" sustained "as a result of" the alleged violation, and D.C. Circuit precedent treats that phrase as a proximate-causation limitation, not an open-ended basis to recover downstream fallout from a broader interpersonal dispute. 5 U.S.C. § 552a(g)(4)(A). As the D.C. Circuit has stated, "[t]he adverse effect must be proximately caused by the Privacy Act violation." *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 37 (D.C. Cir. 1987). And in *In re U.S. Office of Personnel Management Data Security Breach Litigation*, the D.C. Circuit reiterated that the Privacy Act's requirement that plaintiffs sustain actual damages "as a result of" the violation "imposes a proximate causation requirement," under which plaintiffs must allege not only damages but that the challenged violation caused them. 928 F.3d at 67. The court further explained that proximate cause in this context requires allegations that the violation was a "substantial factor" in bringing about the harm and that the type of harm was "a foreseeable risk" of the violation. *Id.* (quoting Restatement (Second) of Torts § 431). Meanwhile, recoverable Privacy Act "actual damages" are limited to "proven pecuniary harm." *F.A.A.*, 566 U.S. at 299.

Here, Plaintiffs' own pleading defeats any plausible proximate-causation showing as to therapy costs. The Complaint alleges that a custody dispute was already underway "prior to this incident," with an existing parenting plan and ongoing family-court conflict—an obvious independent source of stress and treatment-seeking that Plaintiffs do not disentangle from the alleged disclosure. Compl. (ECF No. 2) ¶ 18. The damages narrative likewise ties therapy to "the stress involved in the custody dispute," while also invoking generalized anxiety about continued

exposure of information, confirming multiple asserted stressors rather than a plausibly isolated disclosure-driven expense. Compl. (ECF No. 2) at 7–8. Plaintiffs' opposition further concedes that "the custody battle caused its own stress," even while asserting partial contribution from the disclosure. Pls.' Opp'n (ECF No. 12) at 17–18. That is not enough to plausibly plead that the alleged disclosure—rather than the preexisting custody litigation and related family conflict—was a substantial factor proximately causing a compensable pecuniary loss. And critically, Plaintiffs plead no dollar amount at all for any incremental therapy expense (indeed, no general estimate), which underscores the absence of a plausibly alleged, disclosure-attributable pecuniary loss. *Cf.* 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1311 (4th ed. 2019) ("[A]llegations of special damage will be deemed sufficient for the purpose of Rule 9(g) if they are definite enough to notify the opposing party and the court of the nature of the damages and enable the preparation of a responsive pleading.").

*    *    *

## CONCLUSION

For these reasons, Defendant respectfully requests the Court grant Defendant's Motion to Dismiss and dismiss the Complaint.

Dated: February 23, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *_/s/ Brian Tracy_*
BRIAN TRACY
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-7113

*Attorneys for the United States of America*